## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

BOBBY FRANCIS LOWRY V,

      Plaintiff,

v.                                                                              Civ No. 19-216 MV/GJF

NEW MEXICO DEPARTMENT OF
CORRECTIONS, et al.,

      Defendants.

## PROPOSED FINDINGS AND
## RECOMMENDED DISPOSITION

THIS MATTER is before the Court upon Plaintiff's "Application for Preliminary Injunction" [ECF 3] ("Motion").  The Motion is fully briefed.  *See* ECF 28 (Response).[1]  As explained below, the Court recommends[2] **DENYING** Plaintiff's Motion and *again* **ORDERING** Plaintiff to (1) make monthly payments towards the $350 filing fee, in accordance with the conditions set forth herein, and (2) update his current mailing address.

## I.   BACKGROUND

### A.  Plaintiff's Criminal Convictions

Plaintiff has filed a number of federal and state pro se lawsuits while incarcerated, and the Montana Supreme Court has provided the following information regarding Plaintiff's convictions:

> [Plaintiff] has three convictions and sentences [in the state of Montana] from the Eighteenth Judicial District Court, Gallatin County.  In May 2017, he was convicted of felony theft of property by embezzlement and received a ten-year commitment to the DOC [Montana Department of Corrections] with five years suspended.  In August 2017, the [Eighteenth Judicial] District Court sentenced him to the Montana

---

[1]  Although the Court permitted Plaintiff to "file any reply … within 75 days after his receipt of Defendants' response," Plaintiff declined to do so.  ECF 13 at 4.  Consequently, the Court considers the Motion to be fully briefed.

[2] The Court files this recommendation pursuant to the presiding judge's Order of Reference Relating to Prisoner Cases. ECF 14.

State Prison for two concurrent, five-year terms for felony promoting prostitution and for felony partner or family member assault. The prison sentence runs consecutively to his DOC commitment.

*Lowry v. Guyer*, No. OP 18-0610, 2019 Mont. LEXIS 42, at *1 (Mont. Sup. Ct. Jan. 22, 2019); Compl. [ECF 1] at 26-41 (containing documentation of these convictions).

**B.  Plaintiff's Application for Parole**

In September 2018, Plaintiff "appl[ied] for transfer of [his] parole/probation/other supervision from Montana to New Mexico" and in doing so expressly agreed to "comply with the terms and conditions of [his] supervision … that [would] be placed on [him] by … New Mexico." Compl. 43.[3]   In this application, Plaintiff stated that he planned to reside with his mother in Farmington, New Mexico.   *Id.* at 44-46.   In November 2018, however, Defendants notified Plaintiff that his transfer application was denied due to an "invalid plan of supervision:"

> The proposed address [in Farmington] has been reviewed and is not acceptable. NM [New Mexico] understands [Plaintiff] does not have to register as a sex offender; however, if this were a NM offender, we would still recommend sex offender conditions of supervision based on the fact that the offense, Promoting Prostitution, was sexual in nature.  The residence is within a few hundred feet of school bus stops and Saddleback Park and would be a violation of the New Mexico Correction Department Sex Offender Supervision Behavioral Contract if we allowed him to reside there.
>
> In order for NM to consider accepting the transfer, [Plaintiff] needs to provide an address that is in compliance with NM SO [sex offender] policies, and be willing to comply with SO conditions of supervision, including but not limited to SO treatment and GPS monitoring. NMCD [New Mexico Corrections Department] SO policies restrict registered SO's or offenders supervised with sex offender conditions to reside less than 1,000 feet from schools, parks, daycare centers, or anywhere children frequent.

---

[3] *See also id.* (Plaintiff expressly acknowledging that his "supervision in [New Mexico] may be different than the supervision [he] would be subject to in [Montana], and that [New Mexico] [would] determine the manner in which [Plaintiff] [would] be supervised").

*Id.* at 47-49.[4]

### C.  Plaintiff's Complaint and Motion for Preliminary Injunction

In March 2019, Plaintiff filed a Complaint in this Court, alleging that Defendants contravened the "Interstate Compact for Adult Offender Supervision" and violated his due process rights when they required Plaintiff to comply with New Mexico sex offender policies as a condition of approving his parole transfer application.  *Id.* at 2-14.[5]  As a result, Plaintiff seeks monetary relief, including "all Court cost[s]" and "lost wages [of] $96,000 (low end of average income)." *Id.* at 15.  In addition, Plaintiff requests the following injunctive relief: (1) that "[a]ll sex offender conditions be removed," (2) that "[Plaintiff's] address be accepted (barring other issues)," and (3) that "The New Mexico Department of Corrections expedite [Plaintiff's] interstate application." *Id.*

The instant Motion requests that the Court essentially order Defendants to approve Plaintiff's parole transfer application.  *See* Mot. 2-4 (requesting that the Court enjoin Defendants from further "block[ing] [Plaintiff's] … transfer" until this case is resolved, as well as "strike the denial of [Plaintiff's] residence[] and strike the behavioral modification condition").[6]

---

[4] *See also* ECF 28-1 (Affidavit of Defendant Roberta Cohen, an employee of the NMCD, certifying that (1) "[b]ecause one of [Plaintiff's] offenses is for a Sex Offense (Prostitution), NMCD policy CD-053200(J)(l) does not permit him to reside within 1,000 feet of a school bus stop or place that children frequent;" (2) "[a]ny person sentenced by a New Mexico State Court to a term of probation or parole for a similar offense would not be permitted to live within 1,000 feet of a school bus stop;" (3) Defendants "applied the same criteria in evaluating [Plaintiff's] plan of supervision, as would be applied to a New Mexico resident convicted of a similar crime by a New Mexico Court"); ECF 28-3 (Affidavit of Defendant Kristina Cordell, affirming that (1) "The information provided by Montana indicated that [Plaintiff's] crime was of a sexual nature[:] … [i]t was reported that he advertised on Craigslist.com for his wife to perform sexual acts with others on numerous occasions in various states, against her will, in exchange for money. … [and] [m]oreover, he was physically abusive to her son;" (2) "[i]f [Plaintiff] were a New Mexico offender, this office would [likewise have] recommend sex offender conditions … [as] [h]is sexually inappropriate behavior and victim sensitive nature … dictate [such conditions]"); N. M. Stat. Ann. (1978), Ch. 30 (Criminal Offenses), Art. 9 (Sexual Offenses) § 30-9-4 (providing that "[w]hoever commits promoting prostitution is guilty of a fourth degree felony").

[5] Although the Court refer to Plaintiff's application as a "parole transfer application" for ease of reference, it appears to have been a request for a transfer of both Plaintiff's parole and probation.  *See* Compl. 44.

[6] Plaintiff, however, states that he is "willing to accept the GPS condition until such time this matter is resolved." *Id.* at 2.

### D.  Plaintiff's Parole Violation and Pending Charges

Although Plaintiff's parole *transfer* application was denied, the Montana authorities nevertheless permitted Plaintiff to be paroled (at least within in Montana).  *See*, *e.g.*, ECF 20 (Plaintiff's change of address notification in April 2020, listing a private residence in East Helena, Montana as the location that was "now Plaintiff's physical address").  In April 2021, a local newspaper in Helena, Montana reported that Plaintiff had been "accused of stealing more than $91,000 by accepting payment for construction work that was never completed."[7]  The article indicated that Plaintiff was "charged with felony theft and felony deceptive practices (common scheme)" for "agreeing to perform services" for numerous homeowners beginning in May 2020 "and never completing them."[8]  Plaintiff was arrested in connection with these allegations, and has been incarcerated at the Lewis and Clark County Detention Center in Helena, Montana since March 31, 2021.  *See Lowry v. Dutton*, 489 P.3d 883 (Mont. Sup. Ct. May 4, 2021) (stating that "[t]he State of Montana charged [Plaintiff] with felony theft and felony deceptive practices in early April [2021]" and that Plaintiff was being held at the Detention Center "pending commencement of new criminal proceedings or the *revocation of his parole*" (emphasis added); Lewis and Clark County Detention Center – Inmate Roster (showing Plaintiff's continued incarceration since March 31, 2021), available at https://lccountymt.gov/sheriff/dcbi.html.[9]

---

[7] Tyler Manning, "Helena construction worker accused of defrauding clients out of $91K" (Helena Independent Record, Apr. 9, 2021), https://helenair.com/news/local/crime-and-courts/helena-construction-worker-accused-of-defrauding-clients-out-of-91k/article_357828de-a14d-59fb-8178-817bf7972c92.html.

[8] *Id.* (commenting that some of the work that plaintiff had allegedly agreed—but failed—to complete included window installation, chimney removal, retaining wall replacement, deck construction, concrete work, patio replacement, and electrical work).

[9] On November 24, 2021, the Court confirmed that Plaintiff was arrested on March 31, 2021, by the Lewis and Clark County Sheriff's Office on the following counts, all of which remain pending: (1) "Theft of Property Exceeding $5,000 or Common Scheme," (2) "Deceptive Practices," and (3) "Parole Violation."  In addition, on November 18, 2021, Plaintiff was charged with "Aggravated Assault," a charge that likewise remains pending.

### E.  Plaintiff's Failure to Pay the Filing Fee or Update His Address

In April 2019, the Court granted Plaintiff's Motion to Proceed In Forma Pauperis by excusing Plaintiff from "immediately pay[ing] the entire $350 filing fee." ECF 5 at 1.  The Court, however, "order[ed] Plaintiff to 'make monthly payments of 20 percent of the preceding month's income credited to [his] account' until the entire filing fee of $350 is paid." *Id.* (quoting 28 U.S.C. § 1915(b)(2)).  In addition, the Court ordered Plaintiff to "(1) file monthly financial certificates and make [these] monthly payments … until the $350 filing fee is paid or (2) show cause as to why such payments should be excused." *Id.* at 1-2.  Even though Plaintiff appears to have generally had more than the required $10 balance to make such payments, *see* ECFs 7, 8, 10, in January 2020 the Court "excuse[d] Plaintiff's *prior* nonpayment[s]" based on Plaintiff's asserted financial hardship.  ECF 12 at 1 (emphasis added).  Nevertheless, the Court still "'required [Plaintiff] to pay the full amount of a filing fee' at a later time." *Id.* (quoting § 1915(b)(2)).  As of the filing of this Proposed Findings and Recommended Disposition, Plaintiff has not yet (1) paid *any* money towards this $350 filing fee or (2) filed any additional monthly financial certificates (beyond those that accompanied his three separate requests, ECFs 7, 8, 10, to be excused from the monthly payments for May, June, and August 2019).  *See* ECFs 1-31; *see also* ECF 6 (Court advising Plaintiff in April 2019 that "[f]ailure to comply with … Court Orders may result in dismissal of this case or other sanctions").

In April 2019, the Court also issued its Pro Se Prisoner Case Management Order, which required Plaintiff to, *inter alia*, "keep the Court advised of any changes in Plaintiff's mailing address." ECF 6 at 1 (citing D.N.M. LR-Civ. 83.6.).  In September 2019, Plaintiff notified the Court that his address changed from the Montana State Prison (in Deer Lodge, Montana) to a residential address in Butte, Montana.  ECF 11.  In April 2020—in response to an Order to Show

Cause addressing returned mail, ECF 19— Plaintiff notified the Court that his Butte, Montana address had changed to a residential address in East Helena, Montana.  ECF 20.  But since April 2020—and despite Plaintiff's presumably having a new mailing address at the Lewis and Clark County Detention Center—Plaintiff has not provided this Court with an updated mailing address.

## II.  ISSUES

The primary issues presented by Plaintiff's Motion is whether the Court should exercise its equitable discretion to grant Plaintiff the "extraordinary" remedy of a preliminary injunction, specifically by requiring Defendants to approve Plaintiff's parole transfer application— particularly with his preferred residence that is near school bus stops and a park.  *See* Mot. 2.

### A.  Plaintiff's Primary Arguments

Plaintiff makes four brief arguments as to why the Court should grant his Motion (and thereby order Defendants to approve his parole transfer application):

(1) "Plaintiff believes he will prevail in this matter," given that Defendants allegedly denied Plaintiff due process by "by-passing all courts involved" and "stifl[ing] [Plaintiff's] transfer;"

(2) Plaintiff will "suffer irreparable harm" by his continued separation from his "nine children, a wife, elder mother, home, and social ties in New Mexico" and by the inherent dangers he will continue to face in prison;

(3) the evidence that Defendants lacked the "legal right to deny Plaintiff's residency" "clearly tips in the favor of the Plaintiff;" and

(4) it is in the public interest for "a court to reign in [Defendants]" and for Plaintiff to be  "re-integrat[ed] into society."

Mot. 3-4.

### B.  Defendants' Primary Arguments

In response, Defendants argue that "Plaintiff is not entitled to a preliminary injunction regarding his proposed Farmington residence address" due to the following reasons:

(1) "Plaintiff has not shown that he is likely to succeed on the merits" because (a) "[the Interstate Compact] does not provide Plaintiff any cause of action" and (b) no cases "support[] issuance of the preliminary injunctive relief" when, as a condition of accepting a parole transfer application, a state requires a proposed residence to comply with the state's policies, Resp. 10-14;[10]

(2) "[i]t is not clear that Plaintiff will suffer irreparable harm by his continued residence in Montana;"[11]

(3) "the balance of equities does not tip in Plaintiff's favor" because he has "given no compelling reason why his preference to reside at his Mother's home in Farmington should prevail;" and

(4) "[i]t is not in the public interest to summarily override Answering Defendants'[12] decision."

Resp. 10-15.[13]

## III. LAW

### A.  Preliminary Injunctions

"[T]he 'purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.'"  *Benisek v. Lamone*, 138 S. Ct. 1942, 1945 (2018) (quoting *University of Tex. v. Camenisch*, 451 U. S. 390, 395 (1981)).  "[A] preliminary injunction is 'an extraordinary remedy [that is] never awarded as of right,'" but is instead "a matter

---

[10] Defendants also assert that Plaintiff is seeking a type of preliminary injunction that is "heavily disfavored" in the law: "a form of mandatory injunction that would alter the status quo" (and also provide Plaintiff one of the "ultimate [forms of] relief he seeks").  *Id.* at 14; *see also infra* note 11.

[11] For instance, Defendants observe that "one possible resolution to Plaintiff's dilemma[] is to submit a plan of supervision identifying a New Mexico residence that is compliant with NMCD [Probation and Parole Division's] requirements for supervision.  In other words, the fact that Plaintiff cannot reside at his Mother's home in Farmington, does not completely foreclose transfer of his probation supervision to New Mexico.  There may be other possibilities that Plaintiff has not explored, and that would render the preliminary injunction superfluous."  *Id.* at 14.

[12] Defendants refer to Ms. Cordell and Ms. Cohen as the "Answering Defendants" because "[n]o Waiver of Service form has been received for Defendant 'New Mexico Department of Corrections.'"  Resp. 1 n.1.

[13] Defendants also note that, although "Plaintiff does not explicitly state [what] remaining injunctive relief he seeks" by his reference to the "condition of behavioral modification," any such additional injunctive relief is "moot if the Court does not issue a preliminary injunction to permitting Plaintiff to reside at his Mother's residence in Farmington."  *Id.* at 15.

of equitable discretion." *Id.* at 1943 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). Indeed, such a remedy "is the exception rather than the rule." *Harmon v. City of Norman*, 981 F.3d 1141, 1146 (10th Cir. 2020) (quotation omitted). "To obtain a preliminary injunction, [a plaintiff] must show (1) [he] 'is substantially likely to succeed on the merits,' (2) [he] 'will suffer irreparable injury if the injunction is denied,' (3) [his] 'threatened injury outweighs the injury the opposing party will suffer under the injunction,' and (4) 'the injunction would not be adverse to the public interest.'" *Colorado v. United States EPA*, 989 F.3d 874, 883 (10th Cir. 2021) (quoting *New Mexico Dep't of Game & Fish v. United States Dep't of the Interior*, 854 F.3d 1236, 1246 (10th Cir. 2017)).[14]

In denying a preliminary injunction, a Court need not address whether a party has satisfied all four preliminary injunction requirements. *See Harmon*, 981 F.3d at 1146-54 (concluding that the district court, after "[a]ddressing only the first requirement," properly denied the injunction").[15] Finally, the Tenth Circuit "review[s] the district court's decision to deny [a party] a preliminary injunction for an abuse of discretion." *Harmon*, 981 F.3d at 1146 (further observing that "[a] district court's decision crosses the abuse-of-discretion line if it rests on an erroneous legal conclusion or lacks a rational basis in the record" (quotation omitted)).

---

[14] In addition, "[c]ertain types of preliminary injunctions are disfavored and require a movant to satisfy a heightened standard[:] … '(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits.'" *Id.* at 883-84 (quoting *Fish v. Kobach*, 840 F.3d 710, 723-24 (10th Cir. 2016)). Such "disfavored injunction[s]" require the movant to "make a *strong showing* both on the likelihood of success on the merits and on the balance of the harms." *Id.* at 884 (emphasis added) (quotation omitted).

[15] *See also New Mexico Dep't of Game & Fish*, 854 F.3d at 1246-1256 (addressing only the second requirement and (1) concluding that "the district court abused its discretion" in *granting* the injunction, (2) "vacat[ing] the district court's order enjoining Federal Appellants from [*inter alia*] importing and releasing … any Mexican gray wolves into [New Mexico] without first obtaining the requisite state permits," and (3) "not address[ing] the remaining preliminary injunction factors"—reasoning that "[i]f it is not necessary to decide more, it is necessary not to decide more" (quotation and citation omitted)).

### B.  Due Process

The Due Process Clause states that "No State shall … deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  When a Plaintiff alleges that a state has violated the "procedural due process required by this clause,"[16] the Court conducts a "two-step inquiry:" "(1) whether the plaintiff has shown the deprivation of an interest in 'life, liberty, or property' and (2) whether the procedures followed by the government in depriving the plaintiff of that interest comported with 'due process of law.'"  *Elliott v. Martinez*, 675 F.3d 1241, 1244 (10th Cir. 2012) (quoting *Ingraham v. Wright*, 430 U.S. 651, 673 (1977)).

"[I]f [a] state law provides that a prison inmate is *entitled* to be released on parole … then that interest in being released is a protected liberty interest."  *Id.* (emphasis added).[17]  "But the liberty interest in being released on parole would not qualify for due-process protection if there were no [circumstances] that mandated release, as when 'there is no set of facts which, if shown, mandate a decision favorable to the [inmate].'"  *Id.* (quoting *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 10 (1979)).  In other words, "any 'liberty interest in the *expectancy* of parole' must be expressly created by a state through its parole laws."  *Pruitt v. Heimgartner*, 620 Fed. Appx. 653, 657 (10th Cir. 2015) (unpublished) (emphasis in original) (quoting *Boutwell v. Keating*, 399 F.3d 1203, 1213 (10th Cir. 2005)).

---

[16] In contrast to *procedural* due process, the Due Process Clause also provides for "*substantive* due process" by "specially protect[ing] those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition," and "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed."  *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (emphasis added) (internal quotation marks omitted) (also observing that such rights include, for example, the rights "to marry," "to direct the education and upbringing of one's children," "to marital privacy," "to use contraception," "to abortion," and "to bodily integrity").

[17] "For example, if state law provides that a prison inmate is entitled to be released on parole when the inmate has not violated prison regulations for 10 years, then that interest in being released is a protected liberty interest: release is mandated when the substantive predicate (no violations for 10 years) is satisfied.  The Due Process Clause would then require the state to provide a prisoner adequate procedures—say, notice and a hearing before prison officials—before it could hold him beyond 10 years on the ground that he had violated a prison regulation."  *Id.*

"New Mexico's parole statute does not create a liberty interest in parole."  *Id.* at 657-58 (citing *Candelaria v. Griffin*, 641 F.2d 868, 870 (10th Cir. 1981)).  Similarly, aside from an exception for offenses committed prior to 1989, Montana inmates "have no liberty interest in parole," because "[u]nder both Montana and federal precedent, parole [in Montana] is a privilege and not a right."  *McDermott v. McDonald*, 24 P.3d 200, 202-04 (Mont. Sup. Ct. 2001) (citing *Greenholtz v. Inmates of the Nebraska Penal and Correction Complex*, 442 U.S. 1, 7 (1979)).

### C.  Interstate Compact for Adult Offender Supervision

"[T]he little-known Interstate Compact for Adult Offender Supervision ('the Compact') [is] an interstate agreement that permits the transfer of supervision of parolees … from one state to another."  *M.F. v. State Exec. Dep't Div. of Parole*, 640 F.3d 491, 492 (2nd Cir. 2011).[18] Specifically, "[i]t is an agreement between all 50 states allowing for the transfer of probation supervision of adult offenders between member states."  *Jones v. Chandrasuwan*, 820 F.3d 685, 688 (4th Cir. 2016).  "Under the Compact, the sending state … retains jurisdiction over the offender for purposes of probation revocation, and the receiving state … supervises probation." *Id.*  "The Compact and its authorizing statute [4 U.S.C. § 112]," however, "create neither an express nor an implied federal private right of action."  *M.F.*, 640 F.3d at 497; *Doe v. Pa. Bd. of Probation & Parole*, 513 F.3d 95, 104 (3d Cir. 2008) (holding that, although "the Compact itself

---

[18] The Compact has "congressional consent under Article I, § 10 of the United States Constitution and pursuant to Title 4, Section 112(a) of the United States Code."  Introduction – Interstate Commission for Adult Offender Supervision Rules (April 21, 2020), www.interstatecompact.org/icaos-rules.

creates rights for the various states who are signatories to it," it does not "create an enforceable federal right under 42 U.S.C. § 1983 for probationers and parolees").

### D.  Payment of Filing Fee

"Under the 1996 Prison Litigation Reform Act (PLRA), indigent prisoners . . . . shall be required to pay the full amount of a filing fee." *Cosby v. Meadors*, 351 F.3d 1324, 1326 (10th Cir. 2003) (quotation omitted) (citing 28 U.S.C. § 1915(b)(1)).[19]  Thus—even if an indigent prisoner is excused from immediately paying the entire filing fee—"[t]he remainder of the filing fee is to be paid in monthly installments." *Id.*  Such installment payments are to consist of "20 percent of the preceding month's income [i.e., all deposits] credited to the prisoner's account" (so long as "the amount in the account exceeds $10").  *Id.* at 1326-27 (quoting § 1915(b)(2)).  Furthermore, "when a prisoner has sufficient income to pay a monthly partial filing fee and instead spends his money on amenities at the prison canteen, he cannot be excused for failing to make the required partial payments." *Id.* at 1327.  Indeed, "[i]f a prisoner has the means to pay, failure to pay the filing fee required by § 1915(b) may result in the dismissal of a prisoner's civil action." *Id.*  "In

---

[19] The purpose of requiring prisoners to pay the entire filing fee is to "reduce frivolous prisoner litigation by making all prisoners seeking to bring lawsuits or appeals feel the deterrent effect created by liability for filing fees." *Id.* at 1327 (quotation omitted).  Consequently, "[t]he PLRA is designed to require the prisoner to bear some marginal cost for each legal activity." *Id.* (quotation omitted).

addition, if a court order requires partial payments, the Federal Rules of Civil Procedure allow a district court to dismiss the action for failure to comply with the order." *Id*.[20]

## IV. ANALYSIS

### A. The Court Should Deny Plaintiff's Request for a Preliminary Injunction

The Court begins by observing that Plaintiff's instant Motion may be moot, given that Plaintiff is now detained in jail in Helena, Montana, in connection with new felony charges that appear to significantly limit, if not entirely preclude, the parole options that are at issue in this case. *See supra* note 9. In other words, depending on the outcome of these charges, there may be no parole left to transfer. Furthermore, the outcome of the allegation that Plaintiff has violated his parole potentially will affect whether this lawsuit is rendered moot.

But even if this Motion is not moot, the "extraordinary remedy" of Plaintiff's requested preliminary injunction is not needed to "preserve the relative positions of the parties until a trial on the merits can be held.'" *Benisek*, 138 S. Ct. at 1945. In fact, such a "disfavored" injunction— one that would essentially mandate that Defendants approve Plaintiff's parole transfer application with his preferred residence—would significantly "alter the status quo," particularly if Plaintiff were re-released on parole. *Colorado*, 989 F.3d at 883-84. As discussed below, Plaintiff has not "ma[d]e a *strong showing* both on the likelihood of success on the merits and on the balance of the harms." *Id.* at 884 (emphasis added).

#### 1. Success on the Merits

Plaintiff has not shown—let alone made a "*strong* showing"—that he is "*substantially* likely to succeed on the merits." *Id.* at 883 (emphasis added). For instance, although Plaintiff's

---

[20] *See also Slack v. McDaniel*, 529 U.S. 473, 489 (2000) (observing that "[t]he failure to comply with an order of the court is grounds for dismissal with prejudice" (citing Fed. R. Civ. P. 41(b))); *Cosby*, 351 F.3d at1326 (noting that the Tenth Circuit "review[s] for abuse of discretion a district court's dismissal for failure to comply with a court order").

Motion quotes the Due Process Clause, the Motion relies on no other authority in support of Plaintiff's position.  *See* Mot.  The Motion thus lacks any meaningful authority to support Plaintiff's suggestion that Defendants' denial of his parole transfer application—or perhaps the manner in which they denied his application (e.g., by apparently "by-passing all courts involved")—somehow violated the Due Process Clause.  *See* Mot. 3; *see also* Compl. 4-14 (citing cases, none of which discuss a *parole transfer* denial in the context of due process, e.g., *Chicago v. Morales*, 527 U. S. 41, 53 (1999) (discussing the "freedom to loiter")).  Moreover, the Motion presents no authority, based on due process or otherwise, that would somehow preclude Defendants from applying their usual policy when addressing such applications.  *See* Mot.; *supra* note 4.  As mentioned, for crimes that are "sexual in nature"—even if such crimes do not mandate sex offender *registration*—Defendants represent that they have an established policy of requiring compliance with certain sex offender conditions (e.g., residency restrictions) before approving a parole transfer application.  *See id.*  And although Plaintiff had ample opportunity to reply to this and other assertions in Defendants' Response, he chose not to.  *See* ECF 21 (giving Plaintiff 75 days after Defendants' Response to file a Reply).

Plaintiff has also left wholly unexplained how New Mexico would have deprived him of due process based on a "liberty interest in the expectancy of parole," *Boutwell*, 399 F.3d at 1213—particularly a parole *transfer* to a residence that is "within a few hundred feet of school bus stops and [a] [p]ark."  Compl. 47-49; *see also Elliott*, 675 F.3d at 1244 (providing that plaintiff must "show[] the deprivation of an interest in life, liberty, or property" to establish a procedural due process violation); *Candelaria*, 641 F.2d at 870 (observing that New Mexico's "parole system … does not establish a liberty interest" (quotation omitted)); *McDermott*, 24 P.3d at 202-04 (similarly

observing that Montana inmates convicted after 1989 "have no liberty interest in parole").[21]  In addition, Plaintiff has put forth no meaningful assertion as to how the "Interstate Compact for Adult Offender Supervision"—which "creates neither an express nor an implied federal private right of action"—provides an entitlement to relief.  *M.F.*, 640 F.3d at 492, 497.  Finally, even if Plaintiff had shown that he was "substantially likely to succeed" in some fashion on the merits of his due process (or other) claims—which he has not—Plaintiff has provided no authority suggesting that the appropriate relief would be something akin to mandating that Defendants approve his parole transfer application.

### 2.  Balance of the Harms

Once the Court concludes that Plaintiff has not made the required showing of probable success on the merits, the Court need not analyze his request any further.  *See Harmon*, 981 F.3d at 1146-54.  The Court nevertheless briefly addresses the three remaining preliminary injunction factors and find Plaintiff's showing on each of them to be wanting.  The Court concludes that Plaintiff has not shown that (1) he will "suffer irreparable injury if the injunction is denied," (2) such injury "outweighs the injury the opposing party will suffer," or (3) "the injunction would not be adverse to the public interest," *Colorado*, 989 F.3d at 883.  *See* Mot.  The Court agrees with— and Plaintiff provides no arguments against—Defendants' positions that (1) "[i]t is not clear that Plaintiff will suffer irreparable harm by his continued residence in Montana," as "[t]here may be other [parole transfer] possibilities [particularly in New Mexico] that Plaintiff has not explored, and that would render the preliminary injunction superfluous:" (2) Plaintiff has "given no compelling reason why his preference to reside at his Mother's home in Farmington should

---

[21] Plaintiff also puts forth no meaningful argument as to how his "*substantive* due process" rights may have been violated.  *See* Mot.; *supra* note 16.  And neither does he address Defendants' contention that no cases "support[] issuance of the preliminary injunctive relief Plaintiff seeks here."  Resp. 10-14.

prevail;" and (3) "[i]t is not in the public interest to summarily override [Defendants'] decision." Resp. 10-15.

In sum, Plaintiff has not "ma[d]e a strong showing both on the likelihood of success on the merits and on the balance of the harms." *Colorado*, 989 F.3d at 884.

### B. The Court Should Again Order Plaintiff to Make Filing Fee Payments and Update His Address

As noted, Plaintiff has not paid any money towards his $350 filing fee even though over 32 months have elapsed since he filed this lawsuit. The law, however, requires Plaintiff to pay his filing fee—and to do so in "monthly installments . . . . of 20 percent of [his] preceding month's income" whenever "the amount in [his] account exceeds $10." *Cosby*, 351 F.3d at 1326-27.[22] The Court therefore recommends that the presiding judge (1) renew the order for Plaintiff to make these monthly installment payments and (2) warn Plaintiff again that his "failure to pay the filing fee … may result in the dismissal of [his] civil action." *Id.* at 1327.

Similarly, because Plaintiff has not provided this Court with his current mailing address—despite having been ordered to do so, ECF 6—the Court will also recommend that the presiding judge (1) renew the order for Plaintiff to update his current mailing address and (2) warn Plaintiff again that his failure to do so may also result in dismissal of this case.

## V. CONCLUSION

**IT IS THEREFORE RECOMMENDED** that this Court **DENY** Plaintiff's Motion.

**IT IS FURTHER RECOMMENDED** that the Court renew its previous order for Plaintiff to make monthly payments towards the $350 filing fee, ECF 5, by expressly (1) **ORDERING** Plaintiff to

---

[22] *See also id.* at 1326 ("interpret[ing] the word 'income' … to include all deposits to the prisoner's inmate account, whether the deposit be earned income, a gift, or otherwise").

    (a) file a monthly[23] financial certificate *each month*, even if Plaintiff does not intend to submit a payment that month;

    (b) make monthly payments of twenty percent of Plaintiff's preceding month's income credited to his account, if the amount in the account exceeds $10;

    (c) make such monthly payments until the $350 filing fee is paid; and

    (d) show cause in writing *each month* as to why Plaintiff should be excused for *that month* from making a partial payment—but only if (i) the amount in the account exceeds $10 and (ii) Plaintiff does not intend to submit a payment that month;

and (2) **WARNING** Plaintiff again that his "failure to comply with [the above] order may result in DISMISSAL of the complaint *without further notice*." *Id.* at 2 (emphasis in original).

    **IT IS FINALLY RECOMMENDED** that the Court renew its previous order for Plaintiff to "keep the Court advised of any changes in Plaintiff's mailing address," ECF 6 at 1, by expressly (1) **ORDERING** Plaintiff to update his current mailing address—and to keep the Court advised of any future changes to his mailing address—and (2) **WARNING** Plaintiff again that his "[f]ailure to keep the Court informed of [his] correct address may also result in dismissal of the case or other sanctions." *Id.* at 1 (citing D.N.M. LR-Civ. 83.6).

    **SO RECOMMENDED.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed**.

---

[23] The Court notes that one of Plaintiff's three financial statements only encompasses the time frame of May 1 through May 9, 2019.  ECF 7 at 3-4.